692 So.2d 1029 (1997)
Steven GUILLORY
v.
INSURANCE COMPANY OF NORTH AMERICA, et al.
No. 96-C-1084.
Supreme Court of Louisiana.
April 8, 1997.
*1030 Charles Collins Garrison, David Roy Dugas, New Iberia, John Donellan Fitzmorris, Jr., Caffery, Oubre, Dugas & Campbell, New Iberia, for Applicant.
Richard R. Kennedy, Lafayette, Mack E. Barham, Robert Elton Arceneaux, Travis Louis Bourgeois, Barham & Arceneaux, New Orleans, for Respondent.
CALOGERO, Chief Justice.
We granted a writ of review in this case to determine whether the court of appeal afforded proper deference to the trial court when it reversed a civil jury's factual findings. The jury found plaintiff 20% at fault, defendant 80%, and awarded $150,000 in general damages, $100,000 in specials. The court of appeal, disputing these findings, found defendant 100% at fault, plaintiff not at all at fault. They also increased the special *1031 damages to $1,018,301.50 while affirming the $150,000 general damage award.
For the reasons which follow, we conclude that both with respect to the fault apportionment and the special damages, the court of appeal erred in finding the district court judge clearly wrong or manifestly erroneous. The record does not support their conclusions in these respects.
In particular, the court of appeal's determination that "Guillory's duty not to exceed the speed limit did not encompass the risk that a driver executing an improper lane change would crush his vehicle" misstates the law. The court of appeal decision will be reversed and the district court judgment reinstated.
On August 31, 1990, the plaintiff, Dr. Steven Guillory, an emergency room physician, was driving his Toyota Celica Supra east in the left hand lane of I-10 near Crowley, Louisiana. A tractor trailer rig owned by defendant Texaco Trading Corporation and operated by their employee Louis Richard was moving in the same direction in the right hand lane at sixty miles per hour. According to the defendant Richard, as he approached slower moving traffic, he looked back, noted the Toyota four to five lengths behind in the left lane, signalled, then commenced to move into the left lane. The Toyota, in the meantime, travelling in excess of the speed limit, caught up with the rig. The vehicles collided. The Toyota was then dragged beneath the under belly of the trailer before it spun free and into the grassy median.
It is undisputed that Richard's violation of LSA-R.S. 32:79, which prohibits changing lanes without ascertaining that passage can be made safely, was a direct cause of the accident. Because the jury believed that Guillory's speeding, in violation of LSA-R.S. 32:61, was also a factor in causing the accident, the jury determined that fault should be assessed 20% to Guillory, 80% to the truck driver.
After the accident, Guillory was taken to a nearby hospital where he was treated for injuries to his right hand and left knee. He was released from the hospital that day. Later diagnosis of his injuries revealed median nerve damage affecting his wrist which resulted in a reduction of hand strength and grasp, and a torn anterior cruciate ligament of the left knee.
In 1992, a year and a half after the accident, Guillory was diagnosed with dysthymic disorder[1] and Meniere's disease.[2] Some time during 1993, plaintiff manifested symptoms of major depression[3].
For the injuries, wage loss and medical expenses relating to the accident, the jury awarded plaintiff a quarter of a million dollars. Of this, $150,000 was for general damages for physical and mental pain, both past and future, disability, and loss of enjoyment of life. With respect to medical expenses, past and future, and all loss of income, past and future, the jury granted $100,000 in special damages.
Plaintiff makes no complaint in this court regarding the general damage award, just as he did not at the court of appeal. We need not discuss that element further. With respect to the special damage award, the jury apparently believed that the wrist and knee injuries relating to the accident were not seriously disabling. Additionally, the jury apparently believed that his other medical problems and difficulties were not caused by the accident and thus did not warrant the award of compensable damages.
The record supports the conclusions outlined above. There was no evidence that the knee injury impaired plaintiff's professional work. Although the nerve injury led to difficulties in negotiating some aspects of emergency *1032 room medicine such as fine suturing, that condition did not prevent his continuing to work as an emergency room physician, for he became newly credentialed for emergency medicine at Lincoln Memorial Hospital just four months after the accident. An orthopedic surgeon and a neurologist testified that the injuries did not prevent plaintiff from practicing medicine. In fact, plaintiff worked steadily for more than fifty hours a week until he quit in 1993. He earned his second highest monthly wages for the year in November, 1990, less than three months after the accident. Moreover, 1991 earnings, including $20,000 in income that did not appear on his tax returns, shows an increase from pre-accident earnings.
There was no evidence that dysthymic disorder, a mild depression, prevented plaintiff's practice of medicine or caused a decrease in wages. Major depression, evident some three years after the accident, was linked with Meniere's disease. Meniere's disease, a balance disorder causing severe nausea and vertigo, was not caused by the accident, both lower courts determined, findings with which we agree.
Yet the court of appeal strongly disagreed with the jury's award. They essentially determined that plaintiff was entitled to full compensation for all medical expenses, past and future, without regard to whether they were connected with the accident. They awarded a total of $80,301.53 in medical expenses, including $17,136.55 relating to Meniere's, $23,868 in future psychiatric care relating to the severe depression, and $30,000 in speculative knee surgery that the record showed would cost only $20,000. The court of appeal also awarded $188,000 for past loss of wages based on figures greater than plaintiff's highest earnings, and based on an assumption that Meniere's disease was caused by the accident, even though the court of appeal had discarded that connection. The court of appeal also awarded $750,000 in lost earning capacity without the benefit of supportive evidence in the record.
In a trial where causation and credibility are major issues, a jury's findings of fact are entitled to great deference. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216; reh'g denied, 9/15/94. Those findings may not be overturned unless they are manifestly erroneous. Stobart v. State, 92-1328 (La.4/12/93); 617 So.2d 880. Moreover, when more than one competing view is permissible, as in this case, a fact finder's choice cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990).
Before reversing a jury's conclusions of fact, an appellate court must satisfy a two step process based on the record as a whole: There must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. Stobart v. State, 92-1328 (La.4/12/93); 617 So.2d 880; Weatherford v. Commercial Union Ins., 94-1793, 94-1927 (La.2/20/95); 650 So.2d 763.
That being the standard of review, we will hereafter in this opinion discuss successively special damages, Meniere's disease, dysthymic disorder, major depression, past loss of wages, loss of "earning capacity," and apportionment of fault.

SPECIAL DAMAGES
The jury awarded Guillory a quarter of a million dollars in gross damages. Of this, $150,000 in general damages for physical and mental pain, disability, and loss of enjoyment of life was not the subject of complaint. The plaintiff only argued in the court of appeal that the special damage award of $100,000 was inadequate in light of plaintiff's Meniere's disease, major depression, medical expenses, past and future wage loss, and reduction in earning capacity.

Medical Expenses
Included in the court of appeal's augmented special damages award was an allocation of $80,000 for medical expenses, past and future. While noting that Meniere's disease was not related to the accident, the court of appeal nevertheless included in its award compensation for ear surgery, hospitalization, testing, and medication in connection with that illness. The court of appeal also included in its award all psychiatric expenses comprising doctor visits, medication, and future psychiatric expenses. But the record supports *1033 a conclusion that the physical consequences of Meniere's, which were not caused by the accident, brought on the major depression. Thus, a court of appeal's augmented award for psychiatric expenses is in error. The jury's conclusion in this regard is supported by the record and not clearly wrong. Stobart v. State, through Department of Transportation and Development, 92-1328 (La.4/12/93); 617 So.2d 880.

Meniere's Disease
In 1992, a year and a half after the accident, plaintiff was diagnosed with Meniere's disease. The record shows that the disequilibrium and nausea plaintiff experienced in association with the ear disease greatly interfered with his daily activities. He needed as much as three hours each morning to be sufficiently settled to leave his home. During the day he sometimes fell or needed to catch his balance, and occasionally vomited. The record established that Meniere's disease seriously impaired plaintiff's ability to practice medicine and was ultimately responsible for plaintiff's major difficulties.
The etiology of Meniere's is unknown, but has been linked with long work hours, stress, and irregular eating and sleeping habits. Those factors are consistent with an emergency room medical practice such as plaintiff's. Between shifts, plaintiff travelled more than an hour from the Lake Charles hospital to Abbeville General Hospital fortyfive to fifty miles away. Shifts which could be up to sixteen to twenty-four hours each, varied weekly in duration, time of day, and hospital location. At the time of the accident and in the year that followed, plaintiff's work week averaged more than fifty hours.
The jury apparently believed, and the court of appeal so found, that Meniere's was unrelated to the accident. As a result of this conclusion, provable damages related to Meniere's are not compensable special damages. Thus, the court of appeal erred in formulating an augmented damage award based on total medical expenses and wage loss resulting from Meniere's and its consequences.

Dysthymic Disorder
Plaintiff also suffered from dysthymic disorder, a reversible, non-debilitating depressive condition. Psychiatrist Dr. Richard Roniger noted that plaintiff's description to treating psychiatrist Dr. Cloyd of his childhood and early adult emotional dissatisfactions was a "classic fit" for the development of the disorder. The jury apparently believed that there were no accident related damages having to do with this condition. The jury was no doubt influenced by plaintiff's hand-written note to his treating psychiatrist and verbalization to Dr. Roniger that he had been seeing another psychiatrist since 1989, the year preceding the accident.

Major Depression
Some time during 1993, nearly three years after the accident, plaintiff manifested symptoms of major depression. Two psychiatrists attributed much of the illness to the accident based on plaintiff's verbalization to that effect, and on the assumption that Meniere's was caused by the accident. When opinions are based on assumed facts not supported by the record, they may be rejected. See Ayres v. Beauregard Elec. Co-op., Inc., 94-811 (La.App. 3 Cir. 9/6/95); 663 So.2d 127, writ denied, 95-2432 (La.12/15/95); 664 So.2d 455, and Rogers v. Roch, 95-242 (La.App. 5 Cir. 10/18/95); 663 So.2d 811, writ denied, 95-2769 (La.1/26/96); 666 So.2d 678. A treating psychiatrist's notes revealed that plaintiff claimed that his hand was 100% paralyzed for six weeks following the accident, that he had missed six weeks of work, that he had only been able to work part time since the accident, and that he had financial difficulties from loss of income following the accident. In fact, plaintiff returned to work the next day, maintained a full schedule of fifty plus hours a week until he quit in 1993, earned some of his highest wages in the months following the accident, and was never paralyzed. However, the record did support a finding that the major depression was linked with Meniere's disease, and both psychiatrists so concluded. The major depression, not caused by the accident, supports no compensable damage award, or so the jury concluded, not unreasonably.

Wages
Both sides offered testimony regarding wage loss or lack thereof. A jury's conclusions *1034 of fact are owed much deference. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216, reh'g denied, 9/15/94. A conclusion that there was no past loss of wages finds reasonable support in the record. The jury asked to review plaintiff's income tax records, and it is reasonable to conclude that this exhibit proved valuable in their calculations with respect to wage loss. Plaintiff reported $125,581 as income on his 1990 tax returns. His reported earnings in 1991, the year following the accident, were $123,155. At trial, plaintiff admitted that he had failed to report approximately $20,000 of income. Thus, the jury reasonably concluded that an income of $143,155 in the year following the accident was not a decrease from the pre-accident income.
The record supports a conclusion that decreases in 1992 and 1993 wages subsequent to the appearance of Meniere's symptoms, were in consequence of that illness, which the jury and the court of appeal found was not caused by the accident. Thus, a determination that there was no compensable loss of wages was not clearly wrong.

Loss in Earning Capacity
The court of appeal determined that the jury abused its discretion and, without reference to facts of record, increased plaintiff's special damage award to include $750,000 for lost earning capacity. Our review of the record indicates that such an award could only be derived from calculations which included lost earning capacity resulting from Meniere's disease and the major depression in consequence of that illness. Meniere's disease was found to be unrelated to the accident. Thus, no damages stemming from that illness can legally be charged to defendant who had no connection with its onset.
On the other hand, there is support in the record that there was little or no loss of future earning capacity. Of note is plaintiff's increase in wages in the year following the accident. There was no evidence to suggest that income could not be maintained but for the onset of the Meniere's disease.
Whatever decrease in wages was attributable to plaintiff's loss of movement in his wrist, the jurors apparently believed it was also minimal. Plaintiff's wrist did not impede his performance in low stress emergency room situations. Although such positions were attested to yield lower wages than high stress emergency room positions, there was no testimony outlining the specific quantifiable difference. Moreover, the record shows that plaintiff already had been associated with a lower stress setting at Abbeville Hospital prior to the accident. The jurors apparently considered this in making their determination that future loss of wages was minimal.
Jurors apparently were influenced by testimony that emergency physicians often worked fewer hours later in life. Perhaps they were also influenced by testimony regarding plaintiff's outbursts and unacceptable behavior that resulted in the loss of at least one job. In addition, the record revealed that the emergency service company contracts under which plaintiff was retained, were not renewed. All those factors suggest that the jury reasonably could conclude that plaintiff had not proven his entitlement to future wage loss.

APPORTIONMENT OF FAULT
Liability for fault is subject to a risk-duty analysis based on the following considerations outlined in Mart v. Hill, 86-2191, 86-2200 (La.4/16/87); 505 So.2d 1120:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Id. at 1122.
It is undisputed that defendant driver Lewis Richard was negligent for breaching his duty to make a safe lane change as required by LSA-R.S. 32:79, and that this breach caused the collision and injury to plaintiff to whom was owed defendant's duty.
In dispute are the conduct and duties of plaintiff with respect to the accident. The duty expressed in LSA-R.S. 32:61 requires plaintiff and all other drivers to maintain a *1035 maximum speed of sixty-five miles per hour. Plaintiff admitted that he had been travelling above the lawful speed, and eyewitnesses so confirmed. A vital question in the analysis specific to this case is whether plaintiff's excessive speed was a cause-in-fact of the accident. In its allocation of fault, 20% to plaintiff, 80% to defendant, the jury concluded that plaintiff's conduct was, in part, a cause-in-fact of the accident. Cause-in-fact is a question for the jury. Cay v. State, DOTD, 93-0887 (La.1/14/94), 631 So.2d 393, reh'g denied, (La.2/24/94). Unless a jury's factual determinations are clearly wrong, they may not be overturned. Stobart v. State, 617 So.2d 880 (La.1993). Based on our review of the record, we conclude there was no manifest error in the jury's determination.
Much testimony was offered regarding the point of impact in the collision and its relation to plaintiff's speed. Amidst the scientific calculations based on varying assumptions, the jury heard testimony from a reconstruction expert conceding that no accident would have occurred if plaintiff had not been speeding, assuming the truth of defendant's testimony. Defendant testified that he saw plaintiff's vehicle four to five lengths behind when he looked into his mirror and determined that he could safely switch lanes and pass the vehicles in front of him. The jury also heard testimony from eyewitnesses with whom plaintiff had been convoying for at least forty miles. They testified that immediately prior to the accident, they had slowed their vehicle to sixty-five miles an hour in anticipation of a speed limit reduction, and were not involved in the accident.
Having found no reason to disturb the jury's conclusion of fact with respect to causation, the critical inquiry in this analysis is whether plaintiff's duty encompassed a risk that the type of accident occurring in this case was within the scope of his duty. See Cay v. State, DOTD, 93-0887 (La.1/14/94), 631 So.2d 393, reh'g denied, (La.2/24/97); Gresham v. Davenport, 537 So.2d 1144, 1146 (La.1989). The court of appeal asserted that "Guillory's duty not to exceed the speed limit did not encompass the risk that a driver executing an improper lane change would crush his vehicle." We disagree. Scope of duty is determined by the ease of association between the duty owed and the risk encountered. Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990). A driver, in operating his vehicle above the lawful speed, exposes himself to a risk that another driver will make improper decisions based on miscalculations of plaintiff's speed. In this case, defendant's improper decision to change lanes was based on such a miscalculation. Defendant misjudged the distance plaintiff's speeding vehicle would cover when defendant determined that he had ample time and space to safely change lanes. Under the circumstances, the duty not to speed encompassed the risk that the failure to adhere to the speed limit coincident with another's unsafe move would contribute to the occurrence of an accident that otherwise might not have taken place.
When both plaintiff and defendant are liable for causing injury, LSA-C.C. art. 2323 permits fault to be allocated between the two negligent parties. It is for the trier of fact to consider the conduct of the parties and the extent each contributed to the event resulting in the injury. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985). There was no supportable reason for vacating the jury's findings. We do not believe that the jury erred in its allocation of fault between the parties, for there is factual support from the record and their finding was not clearly wrong.

CONCLUSION
The function of the court is to ensure that plaintiffs are adequately compensated for injuries resulting from the proven negligent conduct of those who cause injury. The role of the jury is to sift through presented evidence to ascertain facts. When evidence is conflicting, as in this case, the jury's determination of what is credible is particularly valuable, for they had before them information available to no reviewing court. They are able to weigh credibility not only by objective language spoken, but by subjective perceptions. Eye contact, shifting of the body, intonation, and other visible, but unspoken, language equally affords a juryman information by which to ascertain truth. It is for *1036 that reason that a reviewing court is required to grant much discretion to the trier of fact.
In this case, the jury has concluded that negligent conduct of the defendant caused injury to the plaintiff and that just compensation entailed an award of $150,000 in general damages and $100,000 in special damages, a total of a quarter of a million dollars. They also assigned 20% fault to the plaintiff and 80% fault to the defendant. After a review of the record in its entirety, we have determined that the jury's findings and district court judgment were not clearly wrong. The court of appeal erred in its application of the standard of review, and in its substituted factual determination in awarding 1000% more than the jury did in special damages. Moreover, the court of appeal also erred in changing the allocation of fault from 20% plaintiff, 80% defendant to 0% plaintiff, 100% defendant.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and that of the district court reinstated.

JUDGEMENT OF THE COURT OF APPEAL REVERSED DISTRICT COURT JUDGEMENT REINSTATED.
BLEICH, J., not on panel. Rule IV, Part 2,§ 3.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
JOHNSON, J., dissents and assigns reasons.
WATSON, J., dissents and will assign reasons.
LEMMON, Justice, concurring.
I write separately to point out that the review of awards of general damages (a review not involved in this case) is different in significant aspects from a review of awards of special damages.
The manifest error standard was established in Canter v. Koehring Co., 283 So.2d 716 (La.1973), to require deference to the fact findings of the trial court, whether judge or jury.[1] This standard is applicable generally to liability determinations in personal injury cases.[2]
In review of quantum determinations, awards of general damages, at least as to the amount awarded for injuries proved to have been caused by the tort, cannot be calculated with mathematical certainty. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). Such awards therefore are reviewed under the "much discretion" standard of La. Civ.Code art. 1999.[3]See Andrus v. State Farm Mutual Automobile Insurance Co., 95-0801 (La.3/22/96); 670 So.2d 1206. Unlike the manifest error standard in which the reviewing court accords no deference to the fact findings of the trier-of-fact once manifest error is determined, an appellate court that determines an abuse of discretion in a trier-of-fact's award of general damages accords some deference to that award. Such an award of general damages is reduced only to the highest reasonable amount or raised to the lowest reasonable amount within the range of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Awards of special damages are more susceptible of mathematical calculation, depending on the jury's or judge's acceptance of the factual evidence supporting the sums claimed for medical expenses, lost wages and the like. Such awards are subject to the manifest error *1037 standard of review. Because the quantum issues in this case involved special damages only, I agree that the manifest error standard was applicable to those factual findings.
JOHNSON, Justice, dissenting.
Plaintiff was involved in a serious vehicular accident on I-10 when his Toyota Supra collided with a tractor trailer rig owned by defendant Texaco and operated by its employee, Louis Richard. Defendant, Insurance Company of North America provided liability insurance.
I believe that it was error to assign 20% of liability to the plaintiff. Our laws impose a duty on drivers not to exceed the legal speed limit. (La. R.S. 32:61 et seq.). However, if the facts and circumstances of a case show that the negligence of a driver in exceeding the legal speed limit is not the proximate cause of an accident, then it is error to place liability on that driver because of his speed. While excessive speed is a violation of law, it is not necessarily the proximate cause of every accident. See Aguillard v. Frank, 542 So.2d 834 (La.App. 3 Cir.1989). A review of the evidence shows that the appellate court properly reversed the jury's assessment of 20% liability on plaintiff. Whether or not he was speeding, Dr. Guillory could not have avoided this collision because plaintiff's vehicle was located along side of the rig when Louis Richard decided to change lanes. The proximate cause of the collision was the negligence of the Texaco driver, therefore, the appellate court was correct in assigning 100% negligence to Richard.
Both lower courts found that plaintiff's ailments associated with Meniere's were not caused by this accident. The major portion of the increase in the awarded special damages was for lost earning capacity. The appellate court determined that the jury abused its discretion and increased the damages award to the lowest amount within the discretion of the trier of fact. Their review of the record convinced them that the lowest appropriate award was $750,000, and I agree.
At the time of the accident, Dr. Guillory was working as an emergency room physician. The evidence proved that he suffered a painful knee injury which will require surgical repair and a period of rehabilitation. While the majority seemed to take note of plaintiff's injuries, they minimize the right hand injury which in this case resulted in a reduction of strength in his dominant hand. He sustained a complete tear of the median nerve in his right arm which reached maximum recovery and has left him with a permanent disability of at least 25%. He has lost the sensory nerve in his right thumb. The evidence further shows that because of this injury, he can no longer perform certain functions required of an emergency room physician such as suturing and drawing blood. Without any doubt, this inability to perform functions that he was trained for is attributable to the accident.
In Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980), a dentist brought a products liability action against the manufacturer and importer of a shotgun which accidentally discharged and severed his right hand. As a result, the plaintiff could no longer practice dentistry but worked part-time as a consultant in the profession. In addition to other damages, plaintiff was awarded $800,000 for impairment of earning capacity as a result of the loss of his thumb on his dominant hand.
The record supports a finding that Dr. Guillory's depression is associated with his physical injuries. Even if this court were to accept Texaco's argument that the depression pre-dated the accident, he is still entitled to compensation where the injuries sustained aggravated a pre-existing condition. When negligent conduct aggravates a pre-existing condition, the victim is entitled to the full extent of the aggravation. Miley v. Landry, 582 So.2d 833 (La.1991). Therefore, any compensation awarded for a loss of earning capacity attributed to plaintiff's depression was not error.
For all of the above reasons, I respectfully dissent and would amend the ruling of the appellate court to exclude the medical costs associated with ear surgery, but affirm their decision in all other respects.
NOTES
[1] Dysthymic disorder is a mild form of depression where a person experiences anxiety, irritability, and low self-esteem. Accompanying symptoms may include sleeplessness, change in eating habits, loss of energy, and loss of pleasure. It is a long term, slow, smoldering pattern.
[2] Meniere's, an ear disease affecting balance, causes vertigo and nausea.
[3] Major depression is a disabling condition characterized by intense depression, slowness of speech and movement, an inability to think and concentrate, indecisiveness, loss of energy, and a general lack of enjoyment of life.
[1] The majority states that this standard is based on the trier-of-fact's better opportunity to observe witnesses and make subjective perceptions. However, an equally important reason for the manifest error standard is the proper allocation of functions between the trial and appellate courts. Canter, supra at 724.
[2] Thus the manifest error standard was properly applied in this case to the jury's allocation of percentages of fault.
[3] The "much discretion" standard applies to the amount of the award of general damages. But there are often factual issues in a review of an award of general damages, such as whether a certain condition was caused by the tort. Of course, most issues decided by courts are mixed fact-law questions, and the fact determinations are reviewed under the manifest error standard.