SAUNDERS, Judge.
The State of Louisiana through the Department of Transportation and Development (DOTD) appeals a jury verdict in favor of appellee, assessing DOTD with 90% of the fault in causing the motor vehicle accident which led to plaintiffs back injuries. The DOTD also contests the plaintiffs entitlement to special damages, as well as the trial judge’s JNOV in favor of plaintiff increasing the general damages awarded by the jury. *269 In its answer to this appeal, plaintiff contends that the jury was correct in its allocation of fault and that the trial judge was correct in granting plaintiffs JNOV. However, plaintiff contends that the modified general damage award is inadequate, and requests that this court increase this award.
After a review of the record, we conclude that the amount of general damages awarded to plaintiff by the trial court should have been increased to $150,000.00, the|2minimum award that is reasonable under the particular circumstances. In all other respects, we affirm the results reached by the lower court.

FACTS

The injuries sustained by plaintiff/appellee, Joseph Procell are the result of an automobile accident that occurred on February 9, 1994 on Hwy. 475 in Zwolle, Louisiana at approximately 8:35 p.m. The accident occurred in a cloud of fog[1] across Hwy. 475 adjacent to the Williamette Industries plywood plant when a small truck operated by Procell collided with a log truck operated by Jimmy Norris.
Approximately two hours prior to the accident, Mr. Doyle Eason, the Department of Transportation and Development Superintendent for Sabine Parish, had arrived at the site and made the decision to close Hwy. 475 due to the fog that was accumulating across the roadway. Upon Mr. Eason’s arrival, Officer Gene Poitras of the Zwolle Police Department was stopping traffic and turning it around due to the dangerous condition. Officer Poitras had parked his car in a driveway adjacent to the roadway with his red lights activated and used a flash light to stop and turn around oncoming motorists. Mr. Eason then took control of the scene and determined that the conditions were so hazardous that the roadway should be closed. Mr. Ea-son did not request any further assistance from Officer Poitras at that time. Apparently, Officer Poitras attempted to obtain a Zwolle fire department truck to place across the roadway but was unsuccessful.
Mr. Eason promptly contacted a DOTD employee by the name of Wendell George and instructed him to go to the DOTD maintenance yard near Many, Louisiana, and drive a dump truck with flashing lights to the site to be used to warn | ^motorists at the intersection of Hwy. 191 and Hwy. 475, which was on the opposite side of the fog where Mr. Eason was located. The dump truck was brought to the location approximately one hour after Eason contacted Mr. George. In addition to contacting Mr. George, Mr. Ea-son also contacted two other DOTD employees with instructions to obtain signs and barricades with amber lights and bring them to the site. Although these employees had been contacted by Mr. Eason at approximately 6:30, they had not arrived at the site with the equipment at the time of the accident which was approximately 8:35.
When the accident occurred, Mr. Eason was sitting in his DOTD truck backed into a driveway at the rear of the Williamette plant with yellow flashing lights activated. Apparently, Mr. Eason sat in his truck for approximately two hours and did not attempt to prevent any motorists from entering into the fog.
Moments before the accident, Clayton Pro-cell was following a log truck operated by Jimmy Norris as well as two other motorists which separated the log truck from Mr. Pro-cell’s truck. Both vehicles immediately in front of Procell turned off of the highway before reaching the site of the fog.
The accident occurred 100-150 feet beyond where Mr. Eason had parked his truck. Pro-cell, who was traveling approximately 20 mph as he approached the site of the accident followed the log truck into the fog. Mr. Norris slowed down considerably or had stopped the log truck in the patch of fog due to a lack of visibility.[2] Procell claims that he *270 began applying his brakes immediately upon encountering the fog. Almost immediately after entering into the fog, Proeell’s truck Ucollided with the pole extending from the back of the log truck. Immediately before impact Procell saw the pole coming towards him and threw himself down across his seat to avoid being impaled by the pole. It is alleged by appellee that this sudden movement is what caused the severe injury to his back.
Mr. Procell subsequently filed suit, naming as defendants Mr. Norris and his insurance company as well as Williamette Industries and its insurer. The matter was set for jury trial on August 7, 1995. Williamette then filed a third party demand against the State of Louisiana, alleging its comparative fault. The plaintiff then amended his complaint adding the State as a defendant. The State answered, reconvening against Williamette Industries, cross-claiming against the plaintiff and Mr. Norris, and filing a third party demand against the Town of Zwolle and the Sabine Parish Sheriff’s Department. The matter was reset for jury trial on February 6, 1996. The week prior to the scheduled trial, Mr. Proeell suffered a stroke which resulted in his hospitalization for approximately three months. That same week, following the stroke, a settlement was entered into between the plaintiff and Williamette Industries. The State obtained a continuance of the trial over the objection of the plaintiff. Subsequently, the Sabine Parish Sheriffs Department was dismissed as a party and trial was scheduled between the remaining parties for December 9, 1996. Shortly before trial, the plaintiff reached a settlement with the Town of Zwolle as well as Mr. Norris and his insurance company.
Trial began on December 9, 1996 and a jury verdict was entered on December 12, 1996, finding that the accident was the fault of the parties in the following percentages:
State of Louisiana, Department of Transportation and Development 90%
Town of Zwolle 0%
| sWilliamette Industries 0%
Jimmy Norris 5%
Joseph Clayton Procell 5%
Damages were awarded totaling $371,-000.03, including medical expenses of $22,-986.05; loss of past income of $46,000.00; and loss of future income and earning capacity of $275,000.00. Mr. Procell was awarded $4,502.33 for his pain and suffering, $4,502.33 for his loss of his enjoyment of life, and Mrs. Procell and the Procells’ three minor children were each awarded $4,502.33 for loss of consortium.
Both the State and plaintiff filed timely motions for judgment notwithstanding the verdict (JNOV) and new trials. On April 25, 1997, the trial court granted the plaintiff’s motion, increasing the award for pain and suffering to $20,000.00, the award for loss of enjoyment of life to $20,000.00, and each award of loss of consortium to $7,000.00. The trial court denied the State’s motion for JNOV and new trial.
The State of Louisiana timely filed this appeal and alleges the following assignments of error:
1. The jury erred in finding that the State of Louisiana, DOTD, was at fault in this accident.
2. The jury erred in its failure to find Williamette Industries at fault in this accident.
3. The jury erred in its assignment of only 5% percent fault to the plaintiff in this accident.
4. The jury erred in its finding that the plaintiff was entitled to the special damages of $22,986.05 in medical expenses, $46,000.00 in lost income, and $275,000.00 in future lost income and loss of earning capacity.
5. The trial judge was in error as a matter of law in denying the State’s JNOV/new trial as there was no showing that the State breached its duty to the plaintiff, there was no showing that the State failed to take reasonable measures to warn the plaintiff of any potential risk of harm, no showing that any negligence on the part of the State *271 the cause of the accident, and no showing that an unreasonable risk of harm existed that posed a danger to persons exercising prudent and reasonable care.
|66. The jury erred in finding that any fault on the part of the State was a cause in fact of this accident.
7. The jury erred in finding that this accident was a cause of any injury to the plaintiff.
Appellee contests the merit of each of these assignments of error, and further claims in his answer to this appeal that the trial judge, although correct in granting his JNOV, failed to raise his general damages award to a reasonable amount.

LAW AND ARGUMENT

Assignments of error 1, 5, and 6, will be considered together since each deals with negligence on the part of DOTD.
In these assignments of error, DOTD claims that the jury erred in finding it to be at fault in this accident and further that the jury erred in finding that any fault on the part of the State was a cause in fact of the accident. DOTD also claims the trial judge erred in refusing to grant its motion for JNOV/new trial as there was no showing that the State breached its duty owed to plaintiff, or otherwise failed to warn plaintiff, acted negligently, or that an unreasonable risk of harm existed.
Since these assignments of error raise questions as to the jury’s findings of fact, they are subject to a manifest error standard of review. “Before reversing a jury’s conclusions of fact, an appellate court must satisfy a two step process based on the record as a whole: There must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong.” Stobart v. State, 92-1328 (La.4/12/93); 617 So.2d 880; Weatherford v. Commercial Union Ins., 94-1793, 94-1927 (La.2/20/95); 650 So.2d 763. Guillory v. Insurance Co. of North America, 96-1084 (La.4/8/97); 692 So.2d 1029, 1032.
After a careful review of the facts, we find that the jury was not manifestly erroneous in its findings regarding fault on the part of DOTD. We further find that |7the jury was not manifestly erroneous in finding such fault to be a cause in fact of the accident. Accordingly, the trial judge’s refusal to grant the State’s motion for JNOV/new trial was proper.

DUTY OF DOTD

It is well settled in Louisiana jurisprudence that liability based on a negligence theory is imposed on the DOTD when it is actually or constructively aware of a hazardous condition of a public roadway and fails to take corrective action within a reasonable time. Ryland v. Liberty Lloyds Insurance Company, 93-1712 (La.1/14/94); 630 So.2d 1289. Furthermore, once the DOTD assumes the duty to control a particular dangerous condition, it must exercise a high degree of care for the safety of the motoring public. Rhodes v. State, Through Department of Transportation and Development, 95-1848 (La.5/21/96); 674 So.2d 239.
Turning to the facts, it is clear that an extremely hazardous condition existed on the evening of February 9, 1994, on Hwy. 475 adjacent to the Williamette plywood plant. It is also undisputed that the DOTD was aware of such condition, and that DOTD superintendent, Doyle Eason, had arrived at the scene of the accident and made the decision to close Hwy. 475 approximately 2 hours before the accident due to the hazardous condition. Once Mr. Eason took control of the scene, it was his duty to exercise a high degree of care for the safety of the motoring public. At this point we must ask whether Mr. Eason’s actions were reasonable under the totality of the circumstances. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. We find that Mr. Eason’s actions were not reasonable under the circumstances.
We note that the DOTD is correct in its argument that a mere showing of the availability of “better” or “different” options is not sufficient to show that a particular course of action was unreasonable. However, we find that Mr. Eason’s actions were |8clearly unreasonable without regard to other possible actions. Upon his arrival at the scene, *272 Mr. Eason took control of the situation but failed to take adequate steps to warn the motoring public. Instead of blocking the roadway and preventing entry into the fog, Mr. Eason merely backed his truck in the driveway of the Williamette plant which is perpendicular to the highway. Even though he had activated his yellow flashing lights this was not an adequate warning of the danger ahead and certainly did nothing to prevent motorists from entering into the dense fog. Once Mr. Eason took control of the scene and made a decision to close the highway, it was his duty to guard against the risk that a motorist might enter into the fog and become involved in an accident. Mr. Eason obviously had the intention to close the roadway since he sent two of his employees to obtain barricades for the highway, and he certainly had the opportunity to prevent motorists from entering the fog either by placing his truck in the roadway or by requesting the assistance of Officer Poitras of the Zwolle Police Department who was already stopping traffic at the scene when Mr. Eason arrived.
After undertaking to close the highway and having adequate time to do so, Mr Ea-son’s improper actions under the unique facts of this case constitute the legal cause of the accident. His failure to properly close the road under these circumstances justifies the jury verdict.

Comparative Fault

In its second and third assignments of error, the DOTD alleges that the jury erred in failing to assess any fault to Wil-liamette industries as well as its assignment of only five percent fault to plaintiff, Joseph Proeell. It is not disputed that the heavy fog covering the roadway was caused by the operation at the Williamette plywood plant. However, since the DOTD had knowledge of the dangerous condition, it had lathe exclusive duty of remedying the situation. See Ronquille v. Martin, 449 So.2d 1126 (La.App. 5 Cir.1984).
In contesting the five percent allocation of fault on the part of Proeell, the DOTD correctly points out that plaintiff had a duty to maintain a proper lookout and when a following driver collides with the rear of a preceding vehicle he is presumed to be negligent. Furthermore, in adverse conditions, drivers are held to an even higher standard of care in the operation of their vehicles and the duty to keep their vehicles under control increases in periods of low visibility. In spite of these principles, we find that the jury’s allocation of only five percent fault was not unreasonable. Evidence adduced at trial established that Pro-cell was traveling at a speed below the posted speed limit, was applying his brakes as he entered the dangerous area, and struck the truck in front of him at a low rate of speed. It also established that the fog was very thick at certain places and then would lift and reappear a short distance away. It was not necessarily unreasonable for Mr. Proeell to proceed slowly from an area of visibility into an area of thick fog. Furthermore, we note that when the DOTD is aware of a dangerous condition on a public highway, the duty to protect the motoring public “extends not only to prudent, attentive drivers but to those who are momentarily inattentive or careless.” Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3 Cir.1991); Burge v. City of Hammond, 494 So.2d 539 (La.1986).

Causation of Injuries

In its seventh assignment of error, DOTD contends that the jury erred in finding that this accident was a cáuse of any injury to the plaintiff. The DOTD claims that shortly before the accident, on two occasions Proeell made visits to the emergency room where he complained of lower back pain which interfered with his [ íodaily activities. These trips, however, were not due to any type of accident which may have caused back problems similar to those complained of after the February 9, 1994 accident. The record shows that these trips to the emergency room prior to the accident were due to nausea and vomiting episodes.
Furthermore, the facts clearly show that Proeell sought medical treatment for back pain only two days after his accident, and Dr. Garland Miller, one of his treating physicians, opined that the back injury was related *273 to the accident. We are unable to locate and DOTD has failed to point out any testimony to the contrary. As such, applying the manifest error standard of review to this finding of fact, we find that the jury was not clearly wrong in its conclusion that the February 9, 1994 accident caused plaintiff’s back injuries.

Quantum of Special Damages

The State further contends that the jury erred in its finding that the plaintiff was entitled to the special damages of $22,986.05 in medical expenses, $46,000.00 in lost income, and $275,000.00 in future lost income and loss of earning capacity. Appellant points out that Mr. Procell’s physical condition prior to the accident was deteriorating, as evidenced by his continuous decrease in earnings and significant medical treatment in the years preceding the accident. Appellant contends that plaintiffs physical condition before the accident is a factor which should be considered in fixing awards for loss of earning capacity, and that if properly considered would have resulted in a much lower award in special damages.
DOTD also faults the failure to include Procell’s 1998 income in the computation of his average yearly compensation by plaintiffs expert economist, Dr. Randy Rice. Apparently, the unproportionately low 1993 income, which was not used in the computation of Procell’s average yearly wage, was due to a stomach virus Inwhich prevented him from working all but the first part of the year. It is alleged by Procell that at the time of the accident in early 1994 he had recovered from the stomach virus sufficiently to permit him to return to work for a local contractor. Proeell points to the testimony of Mr. Ricky Crnkovic, his foreman at his former employer, Brown and Root, which established that a job was available and had been offered to Procell as an electrician making $14.00-$15.00 dollars per hour.
Also relevant in calculating special damages is the fact that Procell had suffered a stroke in February, 1996. At the time of the trial in December, 1996, he had regained at least 90%-95% of his pre-stroke health. Dr. Rice’s calculations for past lost wages was calculated from the accident up to the date of the stroke. Dr. Rice’s calculations for future lost wages assumed that Procell would not have returned to work for one year following the stroke, and reduced his estimate of such wages lost during that time period accordingly. Dr. Rice also reduced the future lost wages by what Mr. Procell could earn in alternative minimum wage jobs. Furthermore, Dr. Miller testified that Procell would have been able to return to work as an electrician after recovering from the stroke but for the back injury. We finally note that DOTD did not present the testimony of a vocational rehabilitation expert or economist to rebut plaintiffs evidence.
In light of the foregoing, we find that the jury was not manifestly erroneous or clearly wrong in its conclusions regarding the amount of special damages awarded to Mr. Procell.

Plaintiff’s answer to Appeal

In its answer to this appeal, appellee claims that although the trial court was correct in granting its motion for JNOV, it failed to raise the general damage award to a reasonable amount. Procell requests an increase in the award for his mental and I i2Physical pain and suffering and loss of enjoyment of life as well as an increase in the award to his wife and each of their three minor children for loss of consortium.
Our task in reviewing an award of general damages is well settled:
Our role as an appellate court in reviewing general damages is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. “Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.” Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Dauzat v. Canal Insurance Company, 96-1261 (La.App. 3 Cir.1997); 692 So.2d 739, 746.
In light of this standard, we find that the trial judge abused its discretion in *274 failing to award a greater amount in general damages for Procell’s pain, suffering, and mental anguish. The record clearly shows that Procell suffered herniated discs at two levels, L4-5 and L5-S1. It was sufficiently established that these injuries were caused by the negligence of the defendant, DOTD. During the surgery to repair these injuries, Proeell sustained injury to the L5 nerve leading into his left foot, which left him with permanent numbness in the left foot. Although Procell experienced relief in the few months following surgery, his pain ultimately returned. Furthermore, even before he underwent surgery, the doctors at LSU only promised relief from the radiating pain into his legs but no relief from his back pain. Procell’s functional restrictions have been well documented in the medical and treatment records from LSU Medical Center as well as from Mr. Terry Eberhardt, plaintiffs treating physical therapist. Mr. Eberhardt’s records contain numerous notations of pain over the extended period of treatment.
hgln view of the above articulated facts and circumstances of this particular case, we find that the lowest reasonable award for Mr. Procell’s pain, suffering and mental anguish is $150,000.00.

CONCLUSION

In light of the foregoing, the judgment of the trial court awarding plaintiff $20,000.00 for pain, suffering, and mental anguish is amended to $150,000.00, the minimum amount that is reasonable under the circumstances. In all other respects, the findings of the trial court are affirmed. All costs of this appeal are assessed to defendant/appellant, DOTD.
AFFIRMED AS AMENDED.
COOKS, J., dissents. I believe William-ette Industries should be assigned a percentage of fault.

. The fog was caused by activities at the William-ette plywood plant. Fog is produced when hot moist air extracted from wood in the dry kiln mixes with outside cold air causing the moisture to vaporize. It can be analogized with vapors caused by exhaled breath in cold weather.

. Mr. Norris told Office Poitres (who filed the accident report) shortly after the accident that he was stopped at the time of the accident. He later testified that he was moving slowly at the time of the accident. Mr. A1 Gonzales, an accident reconstruction expert, testified at trial that the closing speed between Procell’s vehicle and the Nor *270 ris vehicle was only about nine mph at impact. Therefore, if Mr. Norris was not moving, Pro-cell's speed was about nine mph. If Mr. Norris was moving at five mph, Procell’s speed was 14-15 mph.