ROBERT A. CHAISSON, Judge.
IgMilton B. Mary, Jr. appeals from a judgment in his favor, and against his sister, Yolande Mary Vulevich, in these consolidated cases arising out of the parties’ mother’s succession. For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
The succession of Yolande Mills, widow of Dr. Milton B. Mary, Sr., was opened on January 29, 2004, by her daughter, Yo-lande Mary Vulevich, the testamentary executrix. The decedent had three children, namely Yolande, Milton, and Sharon. Sharon predeceased her mother, and therefore her children, the Heartfields, were named legatees in her stead. Various actions were taken in regard to appraisals and payment of taxes, and a detailed descriptive list was filed on January 7, 2005. That descriptive list was traversed by the Heartfield legatees, and a special master was appointed on July 29, 2005. One month later, Hurricane Katrina struck. Almost a year after the hurricane, on August 15, 2006, the special master filed his recommendations with the court.
Ip, On April 27, 2007, Mr. Mary filed a motion for an accounting, and also to remove Ms. Vulevich as executrix. Over the next 20 months, Ms. Vulevich filed three accountings, the first of which was objected to by the Heartfields, and the second and third of which were objected to by Mr. Mary. She also filed, inter alia, a tableau of distribution on November 18, 2008. Then, on December 18, 2008, Mr. Mary filed a separate action against Ms. Vule-vich alleging that she had not administered the succession properly, and that her dereliction of her duties as executrix had caused injury to his share of the succession. This suit was consolidated with the succession action.
*320 After three more years of litigation, during which Mr. Mary and the Heartfíelds again attempted to remove Ms. Vulevich as executrix and to contest her accountings, a judgment of possession was finally entered on July 16, 2012. That judgment resolved all issues as to the Heartfield legatees, and reserved the issues involving Mr. Mary’s claims for a subsequent trial.
The trial was held on November 5, 2012, and resulted in a December 21, 2012 judgment in Mr. Mary’s favor of $187,419. That judgment was subsequently amended on a motion for a new trial to $159,367 due to an error of calculation in the original judgment. The judgment consists of three elements of damages. The first was for diminution in the value of two immovable properties due to the executrix’s neglect during the pendency of the succession, in the amounts of $11,500 and $51,000, respectively. The second was for the loss of proceeds which should have accrued to Mr. Mary from a trust which Ms. Vulevich failed to establish with him as income beneficiary, totaling $88,670. The third was for $8,197, representing Mr. Mary’s share of the executrix’s fee of $38,575. Mr. Mary now appeals the judgment.
J4DISCUSSION
We first address the two immovable properties, namely 2008-2010 South Scott St. and 3908 Canal St. These two rental properties were left to Mr. Mary in the will. He contends that the measure of his damages regarding these two properties is the cost of returning them to their pre-Katrina condition. In 2004, when the succession was opened, both properties had tenants. When Hurricane. Katrina struck, both properties suffered flood damage, but neither had ever been insured for such damage. The Canal Street property consisted of two second story apartments, and a potential first floor commercial space. The upstairs apartments were able to be rented after the hurricane, but the commercial space remained vacant. Sometime in 2010, the tenants complained of odors from the ground floor. Therefore, the ground floor was gutted and cleaned, and the upstairs tenants remained.
The South Scott Street property was not refurbished and remained unrented through the time of trial. Ms. Vulevich testified that this property was on raised piers and did not have more than a few inches of water over the floors. A roof problem developed over the post-hurricane years which Ms. Vulevich failed to repair for about two years.
Ms. Vulevich testified at a hearing on June 1, 2011, that her situation in regard to both properties was that most of the damage was caused by the flood for which neither property was insured. There were thus no funds for these particular repairs unless she took money from other sources in the succession. She further testified that she was reluctant to use such funds because she feared that had she done so, the other legatees would have accused her of mismanaging the succession. She admitted, however, that she had managed to fund repairs on several properties that were left to her in the will.
| BMr. Mary called as witnesses several experts in construction who testified as to the costs of returning both properties to their pre-Katrina condition. One contractor gave an estimate of $800,300, while the second was $920,000. On the other hand, the report of the CPA firm that did accounts of the succession from 2004 through 2012, showed appraised values for the properties in 2007 and again in 2012. The South Scott Street property declined in value from $112,000 to $61,000, a loss of $51,000. The Canal Street property similarly went from $188,500 to $177,000, a loss of $11,500. The trial judge found that *321 these declines in values were attributable to Ms. Vulevieh’s neglect and awarded Mr. Mary these amounts.
In Wainwright v. Fontenot, 00-492 (La.10/17/00), 774 So.2d 70, the Court noted that special damages are those which have a ready market value which can be determined with relative certainty, while general damages are those which are inherently speculative and cannot be fixed with mathematical certainty. Language in that case has also been interpreted as meaning that the standard of review on appeal of both special and general damages is whether the fact finder abused its much discretion. See Dufrene v. Gautreau Family, LLC, 07-467 c/w 547 (La.App. 5 Cir. 2/22/08), 980 So.2d 68. The Gautreau court nonetheless cited Guillory v. Ins. Co. of North America, 96-1084 (La.4/8/97), 692 So.2d 1029, for the proposition that in reviewing special damage awards the appellate court must determine on the record as a whole first, whether there is a factual basis for the finding, and second, whether the finding is clearly wrong. This proposition is actually the manifest error standard, albeit in this case given a different name. Other courts, however, have simply held that the proper standard of review for general damages is abuse of discretion, while that for special damages is manifest | fierror. See Joseph v. Archdiocese of New Orleans, 10-659 (La.App. 4 Cir. 11/10/10), 52 So.3d 203.
In the present case, the above amounts for loss of value are clearly special damages. Using the test enunciated in Gautreau, supra, there is clearly a factual basis in the record for using the difference in the appraised values of the properties in 2007 and 2012 as the measure of damages, and these differentials are not clearly wrong, based as they are on professional appraisals. We also note that the appraisals obviously took into account the deterioration of the buildings over the years, and the loss of value was reflected in the 2012 numbers.
Mr. Mary asserts that he was entitled instead to the cost to place the buildings in the condition they were in when the succession was opened in 2004. He did not offer any evidence to establish what the values of the properties were in 2004, or indeed what they were prior to August, 2007, the date shown for the first appraisal by Ms. Vulevich’s CPA firm. Also, the trial judge noted in his reasons for judgment that the properties suffered flood damage for which there had never been any insurance, and ruled that Ms. Vulevieh was not derelict in not procuring such insurance, because the properties had never been so insured by her parents. He also observed that due to the lack of flood insurance, there were no funds available to completely refurbish the properties. He did find, however, that due to Ms. Vule-vich’s neglect in not gutting the Canal Street property timely, and in similarly not repairing the roof of the South Scott Street property, both properties lost value. He therefore awarded Mr. Mary this diminution in value. We deem this result to be supported by the record as a whole, and not clearly wrong, and we therefore affirm this item of damages.
A related factual issue is raised in regard to lost rents for the South Scott Street property. Mr. Mary contends that the inability to rent the property was due |7to the neglect of Ms. Vulevieh, and that he should therefore be awarded the amount of lost rent during the period of delay. Again, the trial judge pointed out that because there was no flood insurance, there were no funds available to place that property in a condition to be rented. Therefore, the inability to rent these properties was not due to the neglect of Ms. Vulevieh. There was ample evidence of *322 record to support this finding, and the finding is not clearly wrong. We must therefore affirm it. Rabalais v. Nash, 06-999 (La.3/9/07), 952 So.2d 653.
Mr. Mary next alleges as error the trial court’s failure to award him the lost investment income that he would have earned had the two properties been put into his possession sooner. In rejecting this item, the trial judge noted that the delay in closing the succession was due to the actions of all of the parties, including Mr. Mary, and therefore he was not entitled to recover damages due to his own activities. We also point out that the judgment provides that interest is due from date of demand, so that Mr. Mary will in fact receive some compensation for the period of delay in obtaining his inheritance.
The next issue concerns Ms. Vule-vieh’s executrix’s fees. Mr. Mary argues that Ms. Vulevich should have been ordered to return to the succession the entire $38,575 that she was paid. However, Mr. Mary’s share of the executrix’s fee was established by his expert CPA as being $8,197. That is the amount awarded to him in the judgment. The remainder of the fee was presumably charged to the Heartfield legatees and to Ms. Vulevich herself. Had the entire amount been ordered returned, Mr. Mary’s share would still have only been $8,197, the amount that he was awarded in the judgment. We therefore reject this argument as well.
The final issue concerns attorney fees. Mr. Mary asserts that the attorney fees charged to the succession were more properly expended on behalf of Ms. Vule-vich personally, and should not have been considered a succession obligation. | RThe trial judge, who had handled the case since its inception, stated in his reasons for judgment that “all parties had a part in the extensive legal fees and delays in these proceedings.” The record discloses that most of the legal activity in the case was directed either to contesting Ms. Vule-vich’s accounting, or attempting to have her removed as executrix. The legal fees occasioned by those proceedings were clearly related to Ms. Vulevich’s duties as executrix, and were properly charged to the succession. We find no manifest error in the trial judge’s conclusions regarding the attorney fees.
CONCLUSION
For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED.