MOORE, J.
|, This is a dispute over whether a contractual indemnity obligation arises out of a personal injury action filed by Juan Mendoza for injuries he sustained in a gas well blowout on October 19, 2007 in the Vernon Field in Jackson Parish. Defendants EXCO Partners Operating Partnership (“EXCO”) and Mid South Consulting Inc. and Michael Garcie (collectively, “Mid South”) filed cross motions for summary judgment on the question of whether EXCO has an obligation to defend and indemnify Mid South pursuant to a Master Service Agreement executed in 2008 (“MSA” or “2008 Agreement”), or, alternatively, by virtue of an earlier agreement confected in 2004 (“2004 Agreement”) between Mid South and EXCO’s assignor, Anadarko Petroleum Corporation (“Ana-darko”). EXCO’s motion was denied and Mid South’s cross motion granted. The court ordered EXCO to defend Mid South against the plaintiffs’ claims and indemnify Mid South for any damages it is ordered to pay. EXCO filed this appeal. We affirm.
FACTS AND PROCEDURE
Juan Mendoza sustained injuries from a well blowout during a workover operation on October 19, 2007.[1] He filed suit against the above-captioned defendants, including EXCO and Mid South, for alleged damages resulting from injuries he sustained in the blowout.
For several years prior to the accident, Mid South had performed consulting work in and around the Vernon Field, first on behalf of Anadarko, and after EXCO purchased Anadarko’s interests, on behalf of |PEXCO. On the day of the incident at the site in question, Mid South was performing work for EXCO at Vernon Field. The parties had selected Michael Garcie to perform the work in the role of drilling consultant and “company man” for EXCO.
Mendoza filed suit on August 14, 2008 against all parties involved in the well operations, including EXCO and Mid South and Garcie.
Four months later, on December 16, 2008, Mid South and EXCO memorialized their working relationship by entering into the written 2008 Agreement. Among the obligations expressed in the 2008 Agreement is the obligation of EXCO to defend, indemnify and hold harmless Mid South against personal injury claims.
After filing an answer, on July 1, 2009, Mid South demanded from EXCO a defense and indemnity in connection with the plaintiffs’ claims on the basis of the 2008 Agreement. EXCO declined on grounds that the 2008 Agreement was not executed for more than a year after the accident and was not in effect at the time of the accident. Mid South tendered a second *21 demand for defense and indemnity on September 17, 2009, citing the 2004 agreement between Anadarko and Mid South, which it alleged EXCO assumed when it purchased Anadarko’s interests and assumed its obligations. Mid South tendered the indemnity demand a third time and filed a cross-claim against EXCO.
On April 22, 2010, EXCO filed an exception and answer against the cross-claim, and filed a motion for summary judgment. Mid South filed a cross motion for summary judgment on July 29, 2010. Both motions werejjheard on August 24, 2010.
At the conclusion of the hearing on August 24, 2010, the trial court denied EXCO’s motion and granted Mid South’s motion for summary judgment. EXCO filed a motion to designate the judgment as final and appealable, and also filed a supervisory writ application to this court. We denied the writ application, finding that EXCO did not show irreparable harm, and did not satisfy the requirements of Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
On November 9, 2010, the trial court denied EXCO’s motion to designate the judgment as appealable. We granted EXCO’s writ application and vacated the judgment of the trial court. EXCO then timely filed this suspensive appeal.
DISCUSSION
The parties agree that Texas law applies to the contract in question. Therefore, we apply Texas substantive law in resolving the substantive issues before us, except to the extent provided by La. C.C. art. 3537. La. C.C. art. 3540; Sentilles Optical Services, Division of Senasco, Inc. v. Phillips, 26,594 (La.App. 2 Cir. 3/1/95), 651 So.2d 395. However, we find that use of Louisiana procedural law on summary judgment is appropriate. THH Properties Ltd. Partnership v. Hill, 41,038 (La.App. 2 Cir. 6/2/06), 930 So.2d 1214.
“Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish Nat’l Bank, 04-0337, (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). An appellate court reviews a district court’s decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002. Under this standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
By its first assignment of error, EXCO alleges that the trial court erred in denying its motion for summary judgment and in granting Mid South’s cross motion for summary judgment, thereby requiring EXCO to defend and indemnify Mid South in the instant personal injury action. Specifically, EXCO contends that a judgment in its favor was mandated by its motion pointing out the absence of factual support for an essential element of Mid-South’s claim for defense and indemnity, namely, the existence of an enforceable indemnity contract covering this lawsuit. It alleges that neither the 2008 Agreement, nor its purchase of Anadarko’s interests in the Vernon Field imposed the obligations of defense and indemnity for suits arising out of Mendoza’s accident. It claims that the 2008 Agreement between EXCO and Mid South was not in effect at the time of the accident, and EXCO never assumed the *22 indemnity obligations arising from a 2004 Agreement between Mid South and Ana-darko when it purchased Anadarko’s interest in the Vernon Field.
Is After argument, the trial court granted Mid South’s motion for summary judgment and denied EXCO’s cross-motion based on its construction of the “effective date” provision of the 2008 Agreement.[2] The court did not rule regarding Mid South’s alternative claim that EXCO had a duty to defend and indemnify by virtue of its purchase of Anadarko’s interests in the Vernon Field and concomitant assumption of Anadarko’s obligations. Accordingly, the first issue in this case is whether the 2008 Agreement imposes on EXCO a duty to defend and indemnify Mid South against the plaintiffs’ claims.
Texas law regarding the construction of contracts is not dissimilar to Louisiana law. Recently, in Reliance Ins. Co. v. Hibdon, (Tex.App. Hous. (14 Dist.) 2011), 333 S.W.3d 364, the court succinctly stated the rules of interpretation of contracts in Texas as follows:
When interpreting a contract, we must ascertain and give effect to the contracting parties’ intent. Perry Homes v. Cull, 258 S.W.3d 580, 606 (Tex.2008). We focus on the language used in the contract because it is the best indication of the parties’ intent. Id. We must examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex.2006). Therefore, we will not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire agreement. Id. (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983)). We may not rewrite the contract or add to its language under the guise of interpretation. See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 161-62 (Tex. 2003). Rather, we must enforce the contract as written. See Royal Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex.1965). If possible, we should avoid a construction that is unreasonable, | (-.oppressive, inequitable, or absurd. Pavecon, Inc. v. R-Com, Inc., 159 S.W.3d 219, 222 (Tex.App.-Fort Worth 2005, no pet.). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex.1987).
A court may determine that a contract is ambiguous even if neither party makes the claim. In re Sterling Chems., Inc., 261 S.W.3d 805, 809 (Tex.App.Houston [14th Dist.] 2008, orig. proceeding) (citing Sage St. Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex.1993)). However, a mere disagreement about interpretation does not render a contract ambiguous. See id. at 808. Instead, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.2003). By contrast, a contract that may be given a definite or certain meaning is not ambiguous and will be construed as a matter of law. See id. Determining whether contract language is ambiguous presents a question of law for the court. See id.
*23 Guided by these principles, we turn now to the 2008 Agreement. There is no dispute that the very first provision of the agreement states: “This Master Service and Supply Agreement, effective as of December 16, 2008 is made by and between one or more of EXCO Resources, Inc. ... and Mid-South Consultants, Inc.” The date, “December 16, 2008” is typewritten on the form contract that was supplied by EXCO and has the EXCO logo on the face of it. However, on page 13 of the contract, among the standard clauses contained in most contracts (choice of law, severability clause, etc.) there is Section 14, entitled “Effective Date,” which provides the following:
This Agreement shall be deemed to have been in full force and effect on the date first above written or on the date on which CONTRACTOR (Mid South) first commenced the performance of any services for COMPANY (EXCO) or first provided goods, equipment or facilities to COMPANY, whichever first occurred, and even though this Agreement may not then have been reduced to writing.
|7The trial court concluded that this provision “has a clear meaning” and “EXCO should have known the effective date (clause) was in the contract” and “they were the ones that drafted it.” The court then denied EXCO’s motion for summary judgment and granted Mid South’s motion stating that the “effective date provision should be given effect” and “it’s a plain reading of [the] effective date (provision) and EXCO drafted this contract.”
EXCO contends, however, (in its second assignment of error) that the trial court did not properly apply Texas’s law of contractual interpretation; instead the court erroneously applied a rule of construction called contra 'proferentem, that is, the construction of an ambiguous provision in a contract against the person who drafted the document. To support this claim, it points out that the court asked the parties at oral argument who drafted the agreements, and it mentioned several times that “EXCO is the one that drafted the contract” in its ruling on the cross motions for summary judgment. Since the court ultimately concluded that the contractual provision in question has a “clear meaning” and was not ambiguous, the court improperly used a contra proferentem rule of construction.
After our review of the contract and transcript of the hearing, we conclude that the court did not interpret the contract against EXCO as the drafter of the document. Rather, the court simply stated that EXCO should have known that it was incurring the obligations of the contract, including the duty to defend and indemnify Mid South for earlier events because it was the one who drafted the document. The court expressly stated that “the | seffective date has a clear meaning,” and “that EXCO should have known the effective date since it drafted the document.” We conclude, therefore, that this assignment is without merit.
By its third assignment of error, EXCO contends that the trial court erred in giving effect to the “Effective Date” provision in Section 14 of the 2008 Agreement instead of the typewritten “December 16, 2008” effective date on the first page of the agreement. EXCO contends that the court disregarded a contractual rule of interpretation known as the “typed over printed” rule. McCreary v. Bay Area Bank & Trust, 68 S.W.3d 727 (Tex. App. Houston 14th Dist.2001). In other words, it contends that because the date, “December 16, 2008,” was typed on the first page of the agreement as the effective date of the contract, the court should disregard the “pre-printed” language of section 14 of the contract entitled, “Effective *24 Date.” Additionally, EXCO contends that terms stated earlier in an agreement must be favored over subsequent terms, and more specific terms over more general terms. Since the December 16, 2008 effective date term was stated at the outset of the agreement and is a specific date, it should be favored over the general provisions of Section 14. McCreary, supra.
In McCreary, supra, the court was faced with interpreting two conflicting terms of an individual retirement account (“IRA”) contract regarding the interest to be paid. First, the contract generally provided:
Under Individual Retirement Accounts, the funds deposited with the Custodian are deposited in interest-bearing savings accounts and, when permitted, time deposits. The interest rates that may be paid, and the period, if any, over which that rate is guaranteed are controlled by regulations issued by Federal and/or State authorities.
|gSecond, there was a typewritten addendum to the contract that provided that “the minimum rate of interest paid will never be less than 10%.”
The bank argued that the 10% rate of interest applied only to interest bearing savings accounts within the IRA, not the IRA account itself, and once the initial, introductory 18-month savings account expired, it was no longer obligated to pay 10% interest. The plaintiff depositors argued, on the contrary, that the 10% interest rate applied to all funds deposited in the IRA itself.
The court concluded that the typewritten addendum controlled the interpretation of the contract, reasoning as follows:
In construing a contract, we must determine and give effect to the intent of the parties. Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 727-28 (Tex.1981). When determining the intention of the parties, we will consider all the pertinent provisions of the contract and harmonize, if possible, those provisions which appear to conflict by using the applicable rules of construction. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex.1983). One general rule of construction is that when there is a conflict between two provisions, the specific provision controls over the general provision. Ostrowski v. Ivanhoe Property Owners Improvement Ass’n, Inc., 38 S.W.3d 248, 254 (Tex.App.-Texarkana 2001, pet. denied). Moreover, to the extent that typewritten provisions of a contract conflict with printed provisions, the typewritten provisions must be given effect over the printed provisions. Meisler v. Republic of Texas Sav. Ass’n, 758 S.W.2d 878, 884 (Tex.App.-Houston [14th Dist.] 1988, no writ); also McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344 (1957); Easy Living, Inc. v. Cash, 617 S.W.2d 781, 785 (Tex. Civ.App.-Fort Worth 1981, no writ). The rationale for the rule is that typewritten pi'ovisions are the immediate language and terms selected by the parties themselves as setting forth their intentions, whereas the printed form is intended for general use without reference to particular objects and aims. Leslie Lowry & Co. v. KTRM, Inc., 239 S.W.2d 898, 900 (Tex.Civ.App.-Beaumont 1951, no writ). Here, the printed portion of the contract authorizes the bank to unilaterally change any provision of the deposit contract with Improper notice. The typewritten provision provides, however, that the interest rate will never fall below 10 percent. Thus, the typewritten provision is more specific than the printed provision.
Applying these rules of construction, we find there is no “conflict” between the typewritten addendum and the printed contract. The addendum is an exception *25 to the general contract provisions and reserves one term of the agreement which cannot be amended by the bank, i.e., the interest rate may not be reduced below 10 percent. Hence, the deposit agreement is not ambiguous.
Accordingly, the contract provides that the bank may unilaterally amend any term of the deposit contract except its promise to pay at least 10 percent interest. Thus, we find the bank agreed to pay no less than 10 percent interest on all savings accounts in the IRAs for as long as appellants maintained their IRAs with the bank.
Thus, in McCreary the court concluded that the typewritten addendum to the agreement was actually an amendment to the pre-printed term of the contract regarding interest rates that allowed the bank to change the interest rate upon proper notice.
Although McCreary is instructive, we conclude that the apparent conflict of provisions in this case are easily distinguishable from the circumstances in McCreary. First, while the typewritten addendum in McCreary clearly demonstrated the parties’ specific intention to amend the general printed provision on interest rates in the agreement, in the instant contract, the typewritten or handwritten date, “December 16, 2008,” is the only information supplied in the blank space as part of the pre-printed sentence, “This Master Service and Supply Agreement (“Agreement”), effective as of December 16, 2008 is made by and between one or more of ... ” Only this single aspect of the sentence is typewritten, not to amend theJjj contract, but to memorialize the date of the agreement. If, as EXCO argues, the date typewritten or handwritten date in this blank always trumps the “Effective Date” provision of Section 14, then Section 14 has no purpose in the document and is therefore meaningless.
More importantly, however, the “Effective Date” provision clearly contemplates the circumstance that has arisen in this case: Where “the date first above written,” (i.e. the date the parties reduced their contract to writing), is later than “the date on which CONTRACTOR first commenced the performance of any services for COMPANY,” the “Agreement shall be deemed to have been in full force and effect” on the earlier occurrence “even though this Agreement may not have been reduced to writing.” Thus, the very circumstance contemplated by Section 14 has arisen in this case. As acknowledged by EXCO, it contracted with Mid South on the date of the accident and requested Mid South’s services. Mid South performed work for EXCO on that date, invoiced EXCO, and was paid. Applying Texas’s rule of construction to the effective date provisions of the 2008 Agreement, the typewritten “effective date” on the first page of the document and the “Effective Date” provision of the Agreement can be harmonized and effectuated ... so that neither are rendered meaningless. Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex.2006). Therefore, we conclude that the 2008 Agreement applies retroactively to when Mid South performed services for EXCO on the date of the accident.
Accordingly, this assignment is without merit.
112In its fourth assignment of error, EXCO contends that there is another reasonable construction of Section 14 of the 2008 Agreement. According to this interpretation, the agreement should be found to be effective on December 16, 2008, in all instances except for ongoing work that was commenced, but has not yet been completed, prior to December 16, 2008. It con *26 tends that this is consistent with the purpose of clauses that provide for work to begin before the contract is formalized, which is to enable the contractor to begin work without delay.
We conclude that this suggested construction depends solely on EXCO’s position that the purpose of Section 14 making the effective date retroactive to when work is first performed is to avoid delay in commencing work until a written agreement has been confected. However, under EXCO’s interpretation, the agreement does not apply if Mid South finished any such work before the agreement was actually signed.
We do not find this construction to be reasonable nor implied by Section 14. Section 1 on the 2008 Agreement states that the COMPANY, i.e. EXCO, may “employ the services of CONTRACTOR,” i.e. Mid South, “from time to time” and “the services provided by CONTRACTOR may be under verbal or written work orders given by COMPANY to CONTRACTOR from time to time during the term of this Agreement.” Thus, the agreement clearly contemplates periodic services to be supplied by Mid South to EXCO from time to time pursuant to oral or written orders during the term of the agreement, not simply any ongoing services at the time the agreement was confected and any future services. When read in | ^conjunction with Section 14, it is clear that the 2008 Agreement applies to any work orders given to Mid South by EXCO from time to time even prior to the actual written contract.
Therefore, we conclude that this assignment is without merit.
By its fifth assignment of error, EXCO contends that the court should have granted summary judgment for EXCO because the 2004 Agreement was not assumed by EXCO.
As a general rule, the findings, opinions and reasoning of a court do not constitute a judgment or decree, but merely form the basis or reasoning upon which the judgment is rendered. State ex rel. Nicholas v. State, 520 So.2d 377 (La.1988); Fisher v. Rollins, 231 La. 252, 260, 91 So.2d 28, 31 (1956); Delahoussaye v. D.M. Glazer & Co., Inc., 182 So. 146, 147 (La. App. 1 Cir.1938), modified on rehearing, 185 So. 644 (La.App. 1 Cir.1939). Consequently, whether the judgment denying EXCO’s motion for summary judgment and granting Mid South’s motion rested on the grounds of the 2008 Agreement rather than the 2004 Agreement was merely part of the trial court’s reasoning or basis for its judgment. The decree or judgment of the trial court simply denied EXCO’s motion for summary judgment and granted Mid South’s cross-motion for summary judgment.
We further note that Section 12 of the 2008 Agreement consists of an “entireties clause” to the effect that “[tjhis Agreement supersedes all other agreements, oral or written, previously entered into with respect to the subject matter contained in this Agreement and the transactions which it contemplates, and it contains the entire agreement of the parties.” Inasmuch 1 uas the trial court found the 2008 Agreement to constitute the contract between the parties, and by virtue of our de novo review we conclude that the 2008 Agreement is retroactive to when Mid South first performed work for EXCO in the Vernon Field and affirm the judgment of the trial court, this issue is moot.
In its sixth assignment of error, EXCO contends that the trial court erred in denying its motion for summary judgment because the contract in effect at the time of the accident could not have given rise to any duty to defend or indemnify Mid *27 South. In this assignment, EXCO argues that the only agreement between EXCO and Mid South at the time of the accident consisted of the work order made by telephone from EXCO to Mid South to perform services for EXCO. Inasmuch as the only evidence of any contract at that time was this verbal contract, and there was no evidence of any written indemnity agreement at this time, EXCO contends it has no duty to defend and indemnify Mid South. It reiterates its contention that neither the 2008 Agreement nor the 2004 Agreement was in effect so as to obligate EXCO to defend and indemnify Mid South.
This assignment is rendered moot because of our previous holding that the defense and indemnity provisions of the 2008 Agreement is in effect and apply to the incident that gave rise to this action. Under that agreement, EXCO has an obligation to defend and indemnify Mid South.
By its final assignment of error, EXCO argues that the trial court erred in imposing an unlimited indemnity obligation on EXCO, and this |15court should modify the judgment to limit the indemnity obligations. It contends that the terms of the Agreement and the Texas Oilfield Anti Indemnity Act limit its indemnity obligation to the amount of insurance the parties agreed to obtain.
Although the judgment orders EXCO to provide a defense to Mid South against the claims asserted by plaintiffs and indemnify Mid South for any damages it is ordered to pay, the judgment does not address the issue raised by EXCO in this appeal. Nor did EXCO raise this issue in its motion for summary judgment or at oral argument.
As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129, citing, Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Accordingly, we will not consider this issue in this appeal.
CONCLUSION
After our de novo review of the record and arguments, we conclude that the trial court’s judgment denying EXCO’s motion for summary judgment and granting Mid South’s cross motion for summary judgment was correct.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.

. Mendoza was employed by neither Mid South nor Exco. He and others at the site were employed by Basic Energy Services as ''invitees” of EXCO pursuant to an agreement between EXCO and Basic Energy Services.

. Although initially the court stated that it was "Looking at the contracts,” it focused solely on interpreting the "effective date” provision of "the contract,” ultimately ruling in Mid South's favor after finding that "the effective date provision should be given effect.” Since the "effective date” dispute involved only the 2008 Agreement, we conclude that this was the basis of the court's judgment.