MOORE, J.
|! Donwick Carter appeals a Monroe City Court judgment that rejected his claim of wrongful conversion against his former live-in girlfriend, Bonnie F. Briggs. Finding no abuse of discretion, we affirm.
The parties agree that in January 2010, Carter moved in with Ms. Briggs, her daughter and granddaughter in her apartment in the Town & Country area of north Monroe. They also agree that Carter promised to pay the family’s grocery bills and one-half the rent. Carter testified that during this time, he was receiving food stamps, drawing worker’s comp benefits and working part-time at Pine Valley cookie dough company in West Monroe, taking home about $950 a month total. Ms. Briggs, however, testified that he was unemployed the whole time, just sitting around the house, and after she lost her job at Synergy, she started borrowing from relatives to make ends meet. There was much testimony, in particular, about *907 the $800 Ms. Briggs had to borrow to attend a cousin’s funeral in Houston, Texas, in late August 2011.
Also in August 2011, Carter received a lump-sum worker’s comp settlement of $88,000. After spending some of the money, he went to Chase Bank on August 23 and opened a checking account, depositing $21,713. He testified that he never gave Ms. Briggs, or anyone else, authorization to access this account.
By this time, Ms. Briggs felt that Carter should go back to work. Searching online, she found and helped him fill out an application for a job as a truck driver with Central Refrigerated Service. The training, however, was in Salt Lake City, Utah. Carter testified that the following Friday (this would have been August 26, 2011), he boarded a Greyhound Bus to make the two-day trip to Utah. A few days later, he went to a branch of Chase |PBank to withdraw $200 in spending money. He testified that he then discovered $7,600 missing from his account; he “exploded” and told bank personnel he had “been robbed.” According to Carter, someone at the bank told him that a “telephone transfer” had removed the funds from his account and placed them in Ms. Briggs’s.
Carter immediately phoned Ms. Briggs; he testified that she left him a voicemail admitting that she took the $7,600, and he later played this to Monroe Police. Ms. Briggs, however, denied admitting anything, and argued the police could not have known whose voice was on the VMS. According to Ms. Briggs, Carter told her he had placed the money in her account so she could pay off their loans. He also told her not to worry about it, as the folks at Chase Bank assured him that if it was a fraudulent transfer, the bank would “re-credit” his account.
Carter promptly took a return bus to Monroe; on September 4, he reported the theft to Monroe Police, playing the VMS to Sgt. Staten. Sgt. Staten testified he was “not 100% sure” it was Ms. Briggs’s voice. He also testified that Carter told him he had left Ms. Briggs some four months earlier, even though he still had clothes and a computer at the apartment. (Carter later admitted “fudging” in the police report, but said it was the only way to get police assistance to enter the apartment and retrieve his belongings.) Sgt. Staten wrote up an arrest warrant which was not executed until “several months later.”
After Carter accused Ms. Briggs of theft, recriminations followed. On September 7, 2011, Ms. Briggs called the Ouachita Parish Sheriffs Office to report that Carter had stolen a pallet jack and several buckets of cookie |adough from his former employer, Pine Valley, and faked the knee injury for which he drew weekly comp benefits and, later, the lump sum settlement; he bragged that he could “get away with this” (scamming Chase Bank) the same way he “got away with Pine Valley.” Carter denied everything, and testified that as a result of Ms. Briggs’s false report, he was arrested, locked up for 20 days in Salt Lake City, and has spent $2,000 in attorney fees defending the charges.
Carter filed this suit in Monroe City Court in August 2012. He demanded restitution of his $7,600 and general damages for wrongful conversion. Ms. Briggs, appearing pro se throughout, answered that Carter transferred the money to her account “to pay the people that he had borrow [sic ] from over the course of several months[.]” In response to discovery, Ms. Briggs listed five family members to whom she had paid a total of $4,833 for loans, and “Repro [sic ] ear” of $2,500, to get her car out of repossession.
*908 The matter came to trial in January 2013. Carter and Sgt. Staten testified as outlined above. Carter also called Felicia Moore, a teller at Chase Bank in Monroe. Ms. Moore confirmed that Carter had opened the account on August 28, 2011, the “telephone transfer” occurred on August 29, and Carter thought Ms. Briggs did it. She admitted, however, that Chase’s records did not show who actually made the transfer, and that only the account holder could change the settings, not by iPhone but by computer. She theorized that Ms. Briggs, having access to Carter’s home PC and personal information, could have changed Carter’s account settings and then moved the money out of his account. Ms. Moore confirmed that |4after receiving a police report of fraud, Chase would normally transfer the money back to the customer’s account, but this did not happen here because the bank suspected that Carter might have authorized Ms. Briggs to do what she did (also, Ms. Briggs had closed her account by then).
In addition to her own testimony, Ms. Briggs called her sisters, Sarah Thomas and L.D. Briggs, and her son, Kelly Briggs. They corroborated that they had loaned the couple various amounts of money over the months and, in late August 2011, Ms. Briggs repaid them the amounts stated in the discovery response. They admitted that all loans were in cash and without any documentation.
Ruling from the bench, the court told Carter, “Not one centillion [sic] of any piece of testimony that you have given has been credible to the court.” Instead, the court branded him “the author of what you thought was an elaborate scheme * * * to accuse the defendant of taking the money without your knowledge or without your authorization and reporting it to the bank or pretending to be surprised and bamboozled” by the fact the money was gone. The goal was to pay his debts but “also to have the financial institution to reimburse you, so to speak, or to place the money back in your account.” By contrast, the court found Ms. Briggs credible and accordingly dismissed Carter’s claim.
Carter now appeals, raising two assignments of error. By his first assignment, he urges the court erred in treating the ease as “a simple credibility choice” and, specifically, in failing to recognize his right of subrogation under La. C.C. art. 1829(3). This article states that subrogation takes place by operation of law, inter alia, “[i]n favor of an obligor who pays |fia debt he owes with others or for others and who has recourse against those others as a result of the payment.” He argues that even in Ms. Briggs’s version of events, she used Carter’s “separate” funds to pay $4,300 in joint debts and $3,300 in personal debts; hence, of the $7,600 she took, he is entitled to get $5,450 back. However, the record does not show that Carter urged the theory of subrogation in the trial court. As a general rule, appellate courts do not consider issues that were not raised in the pleadings, were not addressed at trial, or are raised for the first time on appeal. Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129; Mendoza v. Grey Wolf Drilling Co., 46,438 (La.App. 2 Cir. 6/22/11), 77 So.3d 18, writ denied, 2011-1918 (La.11/14/11), 75 So.3d 943. Such is the case here. Moreover, the testimony, sparse as it is, does not support the argument that Carter had recourse against Ms. Briggs, but rather that the $7,600 was his portion of their expense-sharing agreement. We perceive no error.
By his second assignment of error, Carter urges the court erred in crediting Ms. Briggs rather than himself. He argues that Ms. Briggs is “demonstrably a person of poor character,” while there is “no evidence” that he is such, and no ra *909 tional fact finder could accept certain of her claims (such as that she acted on Carter’s instructions, or that she actually paid her family members the money). He also argues the judgment impermissibly shifted the burden of proof by making him disprove the claim of oral authorization to take money from his account.
Of course, the reviewing court gives much discretion to the trial court’s findings of fact. Guillory v. Lee, 2009-0075 (La.6/26/09), 16 So.3d 1104; Wainwright v. Fontenot, 2000-0492 (La.10/17/00), 774 So.2d 70. When there is conflict in the testimony, the trial court’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are just as reasonable. Id. In short, the appellate court will not reverse unless it finds no reasonable factual basis for the trial court’s finding and that the finding is clearly wrong. Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802; Guillory v. Insurance Co. of N. Amer., 96-1084 (La.4/8/97), 692 So.2d 1029. The issue is not whether the trial court was right or wrong, but whether its finding was reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
On close review we detect no abuse of discretion. The trial court’s findings depended almost entirely on conflicting testimony of the he said, she said variety. True, the court could have rejected Ms. Briggs’s account, for the reasons advanced by Carter in brief; however, the court could also reject Carter’s account, in light of his admittedly “fudged” crime report to Sgt. Staten, his history of drawing worker’s comp while working for Pine Valley, and his alleged theft of equipment and cookie dough from Pine Valley. We also note the bank teller’s testimony that Chase Bank denied the normal reimbursement because it suspected that Carter himself authorized the transfer. This record supports the court’s rational finding that Carter transferred, or authorized the transfer of, $7,600 to Ms. Briggs’s account and fabricated the theft in a futile effort to make the bank pay him back. We perceive no manifest error.
For these reasons, the judgment is affirmed at Carter’s costs.
JjAFFIRMED.