NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 21-91


JOVAN JACKSON

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2013-4881
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, D. Kent Savoie, and J. Larry Vidrine, Judges.


AFFIRMED.

---

＊ Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

John G. Swift
Donna R. Moliere
Swift & Rhoades, L.L.P.
930 Coolidge Blvd.
Lafayette, LA 70503
(337) 572-9877
COUNSEL FOR DEFENDANTS/APPELLEES:
    Lafayette Consolidated Government
    Ryan Beard
    Ben Smith

Royale L Colbert, Jr.
P.O. Box 3306
Lafayette, LA 70502
(337) 232-5170
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana

La'Derical D. Wagner
111 French Street
New Iberia, LA 70560
(337) 365-4008
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jovan Jackson

**EZELL, Judge.**

Jovan Jackson appeals the decision of the trial court below, granting the involuntary dismissal of his claims against the Lafayette City-Parish Consolidated Government and Officers Ryan Beard and Ben Smith. For the following reasons, we affirm the decision of the trial court.

On the night of September 27, 2012, Constance Tatman called 911, reporting that her live-in boyfriend, Mr. Jackson, had hit her child, leading to a fight wherein Ms. Tatman kicked Mr. Jackson out of their home. Ms. Tatman told the 911 dispatcher that she changed the locks to the house and even boarded up the doors to the home with 2x4 lumber. After several hours allegedly drinking at a friend's house, Mr. Jackson returned to the residence and began attempting to enter the home. Ms. Tatman was on the phone with the dispatcher as Mr. Jackson removed a window air-conditioning unit and entered the home. She told the dispatcher she and her child felt threatened by his entry and presence, as Mr. Jackson got a hammer and began removing the wood from the doors. As Officer Beard arrived on the scene in his K9 unit, Ms. Tatman went outside to meet him, thanking him for his help. Mr. Jackson followed, at which time he was instructed by Officer Beard seven times to get down on the ground. Officer Beard gave these commands with his K9 on a leash. Rather than following Officer Beard's repeated and clear commands, Mr. Jackson exited the home's porch, stepping down and toward officer Beard. Ms. Tatman claimed at the time that Mr. Jackson reached toward his pocket while doing so. Officer Beard then released his police dog, which grabbed Mr. Jackson's arm and took him to the ground, where he was handcuffed and detained.

Mr. Jackson filed the present suit, alleging excessive use of force. A trial was held on the matter. After submission of Mr. Jackson's evidence, the Defendants moved for involuntary dismissal, claiming Mr. Jackson had failed to carry his burden of proof. The trial court agreed, dismissing Mr. Jackson's claims with prejudice. From that decision, Mr. Jackson appeals.

On appeal, Mr. Jackson asserts two assignments of error: that the trial court erred in dismissing his claims, finding he had not satisfied his requirements under Louisiana's duty-risk analysis and that the trial court erred in dismissing the action without addressing constitutional issues under the United States Constitution's Fourth Amendment.

We will briefly address Mr. Jackson's constitutional claims first. At no point in his petition, amended petition, nor at trial did Mr. Jackson claim or address any such alleged violation of his Fourth Amendment rights. "As a general rule, appellate courts do not consider issues that were not raised in the pleadings, were not addressed at trial, or are raised for the first time on appeal." *Carter v. Briggs*, 48,768, p. 5 (La.App. 2 Cir. 2/26/14), 136 So.3d 906, 908. *See also Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129; *Mendoza v. Grey Wolf Drilling Co., LP.,* 46,438 (La.App. 2 Cir. 6/22/11), 77 So.3d 18, *writ denied*, 11-1918 (La. 11/14/11), 75 So.3d 943. As this issue was raised for the first time in the current appeal, we will not address this issue.

Mr. Jackson next claims that the trial court erred in granting the Defendants' motion for involuntary dismissal. We disagree.

Louisiana Code of Civil Procedure Article 1672(B) states, in pertinent part:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not

granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Pursuant to Article 1672, a trial court should consider and weigh the plaintiff's evidence and dismiss the matter if it determines that the burden of proof has not been met. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. A trial court's granting of an involuntary dismissal is subject to the manifest error standard of review. *Id*. Therefore, in order to reverse the trial court's grant of involuntary dismissal, after a thorough review of the record, the appellate court must find that there exists no factual basis for the trial court's finding or that the finding is clearly wrong or manifestly erroneous. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915. "The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable." *Id*. at 918.

"Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case." *Cormier v. Albear*, 99-1206, p. 6 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. This analysis requires a plaintiff to prove five separate elements, as follows:

> (1) [t]he defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-366, pp. 8-9 (La. 12/6/11), 79 So.3d 293, 299.

Here, the trial court found that Mr. Jackson put on no evidence whatsoever concerning the standard of care a K9 officer should use when releasing or using a

3

police dog in restraining a suspect and, therefore, failed to prove the first two elements of the duty/risk analysis. We agree.

At trial, Mr. Jackson put on three witnesses: his sister, Ms. Tatman, and himself. His sister testified very briefly as to what could only be seen as potential damages suffered by Mr. Jackson. She stated nothing related to use of force by police in general or K9 units in particular.

Ms. Tatman also testified for Mr. Jackson. She initiated the call against him, claiming to police at the time that he had abused her daughter and that she and the child felt very threatened when he broke back into the home. Ms. Tatman went on to change her testimony at trial drastically from both the original 911 call, her police report, and her prior deposition. The trial court explicitly noted that the changes to her testimony rendered Ms. Tatman a completely incredible witness, and our review of the record finds the trial court's assessment of her entirely supported.[1] The trial court gave Ms. Tatman's testimony the appropriate amount of weight - none. Moreover, none of Ms. Tatman's shifting testimony sought to establish any standard of care owed by a K9 officer, again leaving this required element of proof unaddressed.

Finally, Mr. Jackson testified regarding the skirmish. Again, he offered nothing in the way of the standard of care required by a K9 officer or any other officer regarding use of force. His relevant testimony was that he knowingly ignored Officer Beard's seven orders to get on the ground, instead, stepping down off the porch toward the officer before the dog was released.

---

[1] Taken at face value, Ms. Tatman's *trial* testimony would indicate Mr. Jackson did not hit her child, that she knowingly lied to the 911 dispatcher and the police upon their arrival, filed a false police report, and instigated the entire exchange out of vindictiveness, making her the true cause of the entire skirmish.

Officer Beard was called to the scene of a domestic disturbance where there had been alleged child abuse, a break-in in progress, and Ms. Tatman actively claiming at the time that she felt threatened by Mr. Jackson's presence and actions, including the fact that at one point, he had a hammer. There is no evidence that Officer Beard acted unreasonably under the circumstances known to him at the time, nor is there any evidence as to how Mr. Jackson claims Officer Beard should have acted. Simply put, Mr. Jackson put on no evidence whatsoever that Officer Beard acted in violation of his standard of care, as Mr. Jackson put on no evidence whatsoever as to what the standard of care owed by Officer Beard was to begin with. Accordingly, Mr. Jackson failed to prove the required elements necessary to establish negligence on Officer Beard's or any other Defendants' part.[2] He clearly failed to carry his burden of proof. We can find no manifest error in the trial court's granting of Defendants' motion for involuntary dismissal.

For the above reasons, the decision of the trial court is hereby affirmed. Costs of this appeal are hereby assessed against Mr. Jackson.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3
.

---

[2] There was no testimony whatsoever concerning Officer Ben Smith or any actions or alleged negligence in his part. Likewise, nothing at trial suggested in any way negligence on the part of the Lafayette City-Parish Consolidated Government. The slight evidence presented at trial dealt strictly with Officer Beard.